UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

|  |  |
|---|---|
| NOEL THOMAS PRO SE LITIGANT ) | |
| Plaintiff, ) | Case No. 8:14-CV-3093-T-35TBM |
| Vs. ) | JURY TRIAL DEMANDED |
| PACESETTERS PERSONNEL SERVICES, ) | |
| Mark Huhta , Pat Tamarow, Garta Woodfin, ) | |
| Tom Corritan ) | |
| VETERAN ADMINSTRATION, ) | |
| Timothy Shea, Arturo Garcia ,Eric Rodriguez,) | |
| Suzanne M Klinker ) | |
| UNITED STATES DEPARTMENT OF LABOR, ) | |
| Karen Stone , Terry Wilkins , Les Grove , ) | |
| Thomas Galassi ) | |
| Defendants. ) | |



## COMPLAINT WITH DEMAND FOR JURY TRAIL

1. Plaintiff Noel Thomas brings this action for violations of state and federal laws against defendants Pacesetters Personnel Services and their conspiring officials ,Veteran Administration and their conspiring officials and United States Department Of Labor , " Occupational Safety & Health Administration" And their conspiring officials in their personal and official capacity ,for conspiring to denying him due process of law .

## JURISDICTION AND VENUE

2. This action is for claims of violations of equal protection clause and due process clause of the fourteenth Amendment of the U. S. Constitution pursuant to 42 U.S.C. sections 1983 and various Florida state laws.
3. Under the Constitution and laws of the United States, and Florida state laws does this action arise. This court has jurisdiction pursuant to 28 U.S.C. sections 1331, 1332, 1343 and 1367.
4. The venue is proper in the Tampa division of the United States District Court for the Middle District of Florida because the alleged acts occurred at the Veteran Administration hospital in Saint Petersburg Florida.
5. Venue lies in this judicial district pursuant to 28 U.S.C. sections 1391(b) in that plaintiff is a resident of this district and claims alleged arose in this district.

## PARTIES

6. Plaintiff resides in Tampa, Florida and is an U.S. military veteran currently working through staffing agencies.
7. Defendant Pacesetters Personnel Services is a national staffing agency.
8. Defendant Mark Huhta Is the general manager of the local Pacesetters branch office in Clearwater, Florida is sued in his personal and official capacity.
9. Defendant Pat Tamarow is a corporate official for Pacesetters based in the Texas headquarters is sued in his personal and official capacity.
10. Defendant Garta Woodfin is a corporate official for Pacesetters working in the Texas headquarter is sued in his personal and official capacity.
11. Defendant Tom Corritan is the general manager of the Pacesetters branch in Tampa, Florida is sued in his official capacity.
12. Defendant Veteran Administration is a federal agency with the responsibility of serving military veterans.
13. Defendant Timothy Shea is a Veteran Administration police officer is sued in his personal and official capacity.
14. Defendant Arturo Garcia is a Veteran Administration police officer is sued in his personal and official capacity.
15. Defendant Eric Rodriguez is a patient advocate supervisor for the Veteran Administration hospital is sued in his personal and official capacity.
16. Defendant Suzanne M Klinker is the director of the Veteran Administration hospital is sued in her personal and official capacity.
17. Defendant United States Labor Department, Occupational Safety & Health Administration is a federal agency with duty of safety regulation.
18. Defendant Karen Stone is an official for Occupational Safety & Health Administration in Tampa Florida is sued in her personal and official capacity.
19. Defendant Terry Wilkins is an official for the Occupational Safety & Health Administration is sued in his personal and official capacity.
20. Defendant Les Grove is an official for the Occupational Safety & Health Administration is sued in his personal and official capacity.

21. Defendant Thomas Galassi is the director of enforcement program for the Occupational Safety & Health Administration is sued in his personal and official capacity.

## FACTS AND GENERAL ALLEGATIONS

22. On September 30, 2013 plaintiff was assaulted by a co- worker while working for Pacesetters Personnel at the Bay Pines V. A. hospital in Saint Petersburg, Florida where he sustained long term neck and shoulder injuries due to this attack.
23. Pacesetters removed, replaced and terminated plaintiff from the job site for allegedly using profane language but allowed the assailant (who is of the white race) to remain on site and employed with the company.
24. Due to Pacesetters failure to take the proper action against the assailant plaintiff was forced to file charges with the Veteran Administration police department to make Pacesetters assume the responsibility for any liabilities that might occur from the incident.
25. Plaintiff sustained long term neck and shoulder injuries and went through physical therapy at the V.A. hospital for several months and was unable to work for a long length of time and Pacesetters refused to provide worker compensation and denied that the incident occurred.
26. On October 3, 2013 plaintiff file charges against the assailant for assault with officer Timothy Shea and throughout that month plaintiff called the V.A. police department seeking the status of the complaint which phone records could verify but he was only transferred to unrelated offices until finally on October 25, 2013 plaintiff appeared in person and spoke to officer Arturo Garcia about the status of his complaint but was only mislead and directed to V.A. release of information to obtain documentation pertaining to the incident.
27. Plaintiff went to release of information on the same above date and once he received the police report plaintiff quickly noticed that it was a falsely fabricated document so on October 29, 2013 plaintiff spoke to Eric Rodriguez who is the supervisor over the V.A. patient advocate office about setting an appointment to speak with the director of the V.A. hospital which is a veteran right for redress of any issue but Rodriguez refused to comply and began insulting plaintiff about his allegations.
28. On October 30, 2013 plaintiff spoke to a patient advocate officer named Mary(last name unknown) by way of telephone about arranging an appointment with the director of the V.A hospital and she stated that she would look into the matter but never contacted plaintiff again proving a conspiracy exist due the interference of that office.
29. Then on November 27, 2013 plaintiff spoke with an official of the V.A. Safety Management office named Linda (last name unknown) who stated she would investigate the incident and that she would contact plaintiff as soon as possible and around December 2 and 5 of 2013 plaintiff received calls and messages informing him that the V.A. police department would take some type of action in which they never did, so plaintiff went through every level of the chain of command to resolve his issue.
30. After the negative experience with the patient advocate office Plaintiff begun filing eleven complaints with the director's office throughout the months of November and

December, seven of those complaints was placed in drop boxes inside the hospital and four were mailed directly to the director's office but plaintiff never received not one response which prove that office had no intention of resolving the problem.

31. In the month of January of 2014 plaintiff filed a tort claim (sf95) against the Veteran Administration for negligence due to failure to investigate the incident, then make an arrest and provide due process but their actions allowed Pacesetters to escape their responsibility to compensate for any liabilities .

32. On March 26 , 2014 plaintiff received a letter from the V.A. Regional counsel denying his tort claim without addressing the issues at hand but instead they alleged that they are not responsible for the behavior of their contractor's which is completely untrue according to V.A.  Policies [Directive 0730 " Purpose, Policy(3),Police code of conduct(1)(d),Law enforcement(1)(8)(i),Responsibilities(1)(2)(3),Deputy Assistant Secretary for security and law enforcement(2),and V.A. Management Officials (1)(2)] which clearly outline the duties of that agency which prove willful disregard for their own rules and regulations but my intention was not holding them responsible for the action of anyone that was never the issue, the facts were the Veteran Administration police never investigated the incident.

33. Then plaintiff received a certified letter from the Veteran Administration dated October 29, 2014 denying his request for reconsideration of his denied tort claim and in that letter they displayed total disregard of law and clear evident of a willful act of conspiracy.

34. Simultaneously while plaintiff was pursuing legal redress from the Veteran Administration he was requesting assistance of the Department of Labor, Occupational Safety & Health Administration to investigate the criminal activities of Pacesetters Personnel but unfortunately they aided in the conspiracy to deny plaintiff due process.

35. In January of 2014 plaintiff sent certified letters to the Department of Labor (OSHA) in Atlanta, Georgia and Washington D.C., initiating a formal complaint but on January 13, 2014 it was denied for said reason that it did not meet the whistle blower standard but plaintiff letter clearly outlined a work place violence claim so OSHA decision was either negligence or willful obstruction.

36. Then on February 5, 2014 plaintiff received another letter from OSHA Atlanta, Georgia division stating that they received his original letter and they would be sending this information to the local office (Tampa, Florida) but this was only done after plaintiff contacted several OSHA officials complaining about the mishandling of his complaint.

37. On February 28, 2014 plaintiff received a letter from the Tampa, Florida office closing his case based upon false information provided by Pacesetters whom OSHA allowed to investigate themselves showing clear negligence and racism because OSHA never followed up on any of the information plaintiff gave them but only communicated with Pacesetters corporate officials instead of the local personnel.

38. The main reason why Pacesetters was able to lie to OSHA is because the V.A. never investigated the incident so this allowed Pacesetters to claim the event never occurred and with all the documents plaintiff provided to each agency they all ignored this information and chose to conspire and cover up those facts.

39. After the Tampa, Florida office closed plaintiff case he appealed it to the regional branch in Atlanta, Georgia in March of 2014(this is the initial site where plaintiff filed his complaint in which it was deny first, then excepted, then forwarded to the local office) and on April 1, 2014 plaintiff received a letter from the Atlanta, Georgia office stating they would be investigating the incident and would be requesting information from the local office relating to his complaint.
40. Ever since January of 2014 plaintiff have been going back and forth between these two OSHA offices with little or no results which caused an extreme loss of time, that is vitally important in pursuing redress in this kind of action so it is obvious that the action of this agency was/is to frustrate plaintiff effort to achieve his desired results to obtain due process of law.
41. Now in that April 1, 2014 letter the Atlanta, Georgia office acknowledged the reception of plaintiff March 24, 2014 letter and from that time up until June of 2014 no action had been take even though this process started in March of 2014 and this delay is seemingly due to suspect reasons and what is meant by this is plaintiff have constantly attempted to contact OSHA but no one had any information on the status of his appeal or complaint and he was sent back and forth between OSHA offices in this appeal process just as in the initial stages of that complaint.
42. Here is a brief account of plaintiff attempt to rectify the problems produced by the OSHA officials to assist Pacesetters in their criminal behavior, on June 3, 2014 plaintiff spoke to an OSHA official (Erin Sanchez) in the Tampa, Florida office and he informed plaintiff that his case was closed and that he had no knowledge of an appeal nor any activities beyond the closure of the complaint.
43. On June 4, 2014 plaintiff spoke with several OSHA officials in Atlanta including Terry Wilkins who was the investigating officer who stated that he was waiting on Tampa office to complete their investigation and again this was without performing their own independent inquiry which was supposed to be the purpose of the appeal process.
44. In this communication with Terry Wilkins plaintiff informed him that he needed contact information for the Washington, D.C. branch because plaintiff had exhausted all his remedies on the local and regional level of OSHA but Mr. Wilkins only provided a general (800) phone number not the one to the proper official.
45. Once plaintiff threaten Mr. Wilkins with appealing to Washington branch he immediately called the right person in the Tampa office (Les Grove) who contacted plaintiff on June 4, 2014 the same day plaintiff spoke to Mr. Wilkins and in this conversation with Mr. Grove he stated that he had spoken to Mr. Wilkins and that he had plaintiff appeal setting before him on his desk, this is the same appeal no one knew existed but Mr. Grove had been holding on to it without taking any action for several months.
46. After calling around the Washington OSHA branch plaintiff finally contacted an official named Greg Barber on June 4, 2014 and explained the situation and he stated that he would investigate the matter and would contact plaintiff as soon as possible and on June 9, 2014 Mr. Barber called and provided plaintiff with whistle blower information but plaintiff claim was a work place violence issue and the whistle blower status had already previously been deny.

47. After plaintiff reminded Mr. Barber of the nature of his claim he was informed by Mr. Barber to contact the Whistle blower department and that they probably would direct plaintiff to the proper office and then on June 10, 2014 plaintiff called the above office and spoke to an official named Eric (unknown last name) who provided plaintiff with the proper office, phone number and contact person so just to obtain basic information has been a serious problem and totally time consuming.
48. Plaintiff crafted a letter and sent it by certified mail to the directorate of enforcement programs (Thomas Galassi) in June of 2014 for his office to intervene in this affair so that plaintiff could pursue legal action against Pacesetters Personnel but unfortunately his office decided to ignore this plea and add injury to injury by aiding and abetting in this conspiracy of violating the law of due process.

### COUNT I - DEPRIVATION OF RIGHTS UNDER THE CIVIL RIGHTS ACT

(Against all Defendants)

49. The plaintiff incorporates and restates the preceding paragraphs of this complaint as if fully set forth herein.
50. Between September of 2013 and October of 2014, Pacesetters as a conspirator was an "agency" and was acting "under the color of law" within the meaning of 42 U.S.C. section 1983.
51. Since January of 2014 (OSHA) as a conspirator has been an "agency" and was acting "under the color of law" within the meaning of 42 U.S.C. section 1983.
52. The Veteran Administration from October of 2013 to October of 2014, as a conspirator has been an "agency" and was acting "under the color of law" within the meaning of 42 U.S.C. section 1983.
53. Pacesetters, OSHA, and Veteran Administration collectively as conspirator's, acting under the color of law violated plaintiff's constitutional rights and privileges by using their position of authority and power to violate the plaintiff's rights to due process of law guaranteed by the constitution of the United States under the fourteenth amendment, the right to petition for grievance under the first amendment, the privileges and immunities clause of article IV, and the equal protection clause as applied through the fourteenth amendment.
54. The Veteran administration violated plaintiff's rights to due process of law guaranteed by the United States constitution, under the fourteenth amendment, the right to petition for grievance under the first amendment, the privileges and immunities clause of article IV, by delaying and impeding the plaintiff's meaningful access to courts (e.g.) interfering with plaintiff's tort claim litigation against them, as set forth in this complaint.
55. OSHA, Pacesetters, Veteran Administration, violated the equal protection clause applied through the fourteenth amendment by treating plaintiff differently and less favorably than similar or normal situation based upon his color, as set forth in this complaint.

### COUNT II - CIVIL CONSPIRACY

(Against all Defendants)

56. Plaintiff incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.
57. Defendants, Pacesetters have knowingly and willingly conspired to hinder plaintiff from obtained due process by denying him worker compensation and refusing to acknowledge the assault incident and injuries plaintiff sustained, and stated to OSHA they have no record of the incident.
58. Plaintiff was wrongfully removed from the work site and terminated by Pacesetters based upon his race violating 42 U.S.C. section 2000e-2 (a)(1) unlawful employment practice , 42 U.S.C. section 1986 , "Action for neglect to prevent", and 42 U.S.C. , section 2000e-3(a) Discrimination for opposing unlawful employment practices, the first code deal with the illegal termination of plaintiff , the second code deal with the negligence of Pacesetters and the refusal of their officials to stop the commission of a wrongful act and the third focus upon discrimination against plaintiff based on race .
59. Veteran Administration in January of 2014 was aware of the falsely misrepresented police report that caused plaintiff total hardship but after he brought that violation , through their chain of command , to their attention the Veteran Administration officials conspired to cover up the misdeed .
60. Both Defendants Pacesetters and the V.A. Violated federal law (i. e.) 18 U.S.C., section 241, which states that if two or more persons conspire to injure, oppress, threaten and intimidate any person in any state or territory by denying him rights and privileges secured by the constitution or federal laws they would be penalized but both agencies falsified documents and conspired to ignore plaintiff petitioning effort to rectify his injuries and employment problem.
61. OSHA conspired alone with the above mentioned agencies after the plaintiff requested assistance to force those Defendants to address his issues which started in January of 2014, where OSHA rejected and delayed his complaint several times and even could but would not give plaintiff any information on the status of such, so that act was clear collaboration to deny plaintiff due process and the evident of a conspiracy.

**COUNT III - NEGLIGENCE OF DUTY**

(Against all Defendants)

62. The plaintiff incorporates and restates the preceding paragraphs in this complaint as if fully set forth herein.
63. Defendants, Pacesetters officials, Mark Huhta, Pat Tamarow, Garta Woodfin, and Tom Corritan, all failed to perform their assigned duties after plaintiff brought the assault incident to their attention clearly demonstrating negligence and disrespect for his rights for proper compensation for injuries.
64. After plaintiff appeal to local management (Mark Huhta) about the incident Mr. Huhta immediately terminated him from any future employment with that company causing great lost due to the injuries he sustained and the inability to perform any kind of work because of that condition.

65. Plaintiff followed the chain of command by first contacting Pat Tamarow at the corporate office in Texas and then after negative results, Mr. Tom Corritan from Florida was contacted but to no avail neither of these officials knew the proper course of action to take and plaintiff had to call around the Texas corporate office where he contacted Mr. Garta Woodfin who also proved to be ineffective and willfully obstructive.

66. All of the above activities with Pacesetters officials occurred in October of 2013 which forced plaintiff to file charges with the Veteran Administration police against the assailant on October 3, 2013 where plaintiff was question by Timothy Shea who plaintiff provided with all relevant information pertaining to the assault incident but to no avail that data was negligently ignored and/or discarded by that agency.

67. Plaintiff follow up his initial report by calling the V A police for the status of his complaint but was refused information and transferred to unrelated offices and after several attempts plaintiff decided to appear in person on October 25, 2013 to speak with officer Arturo Garcia the person investigating the incident but he refused to comply with plaintiff request and directed him to release of information to obtain the report which meant the investigation was complete.

68. Plaintiff then contacted the V. A. patient advocate office and spoke with supervisor Eric Rodriguez to set an appointment to meet with the director of the V. A. hospital to attempt to rectify the problem but Mr. Rodriguez denied plaintiff this access and accused him of making false allegations against a government official purposely denying plaintiff due process.

69. Immediately after that violation plaintiff filed several complaints with the director's office, some were mailed directly and others were placed in drop boxes throughout the hospital but as of this date plaintiff have not received any response.

70. Plaintiff contacted other officials in the V. A. patient advocate office in October of 2013 with no resolve so in the months of November and December plaintiff spoke to an official in the V. A. safety management office who was unable to assist in the resolution of the issue which show clear negligence due to the level of appeal plaintiff had to go through up unto that point.

71. In December of 2013 plaintiff filed a tort claim (sf95) against the Veteran Administration for negligence after exhausting all remedies but on March 26, 2014 this action was denied and plaintiff immediately appealed that decision to the national level of the Veteran Administration and on October 12, 2014 their six month deadline ended with no response, so that time delay was purposely done to exceed the statute of limitation.

72. While plaintiff was pursuing redress from the Veteran Administration he was simultaneously petitioning Department of Labor the OSHA division to intervene with the problem plaintiff was experiencing with Pacesetters Personnel but was hinder by that agency on every level.

73. Throughout the months of January and February 0f 2014 plaintiff was purposely denied due process by Department Of Labor (OSHA) after filing a complaint with that agency in January of 2014 who continued to refused to entertain that action by intentionally placing it under the wrong category, denying the complaint and sending it back and forth to the same offices with no resolve.

74. Plaintiff received a letter dated April 1, 2014 from "OSHA, Atlanta, Georgia branch" stating that they were going to investigate plaintiff assault incident and would be requesting information from the local office (Tampa, Florida) be mindful this office was the initial branch where plaintiff filed his complaint and has maintained constant contact with them but now they are requesting documentation that they already have and this delay was intentional.

75. From April of 2014, up until July of 2014, plaintiff contacted several "OSHA" officials (i.e.) Erin Sanchez who confirmed the fact that there was no record of an appeal nor an active complaint proving a conspiracy to delay and hinder plaintiff request.

76. On June 4, 2014, plaintiff spoke with Terry Wilkins (OSHA, Atlanta, Georgia investigating officer) who consistently told plaintiff he didn't know the status of his complaint but was awaiting a decision from the local branch (Tampa, Florida) but after plaintiff informed him of his plans to contact the national level (Washington. D.C.) Mr. Wilkins immediately contacted the proper person.

77. Then on the same date (June 4, 2014) Les Grove ( OSHA, Tampa, Florida investigating officer) Called plaintiff and stated that he had plaintiff appeal in his possession the same that no one knew existed and that prove without doubt, "purposeful and willful negligence"

78. After exhausting all remedies plaintiff begun contacting OSHA officials on the national level (i.e.) Greg Barber who wasn't sure of what person or office to contact so he just told plaintiff to contact the whistle blower division which plaintiff had done at the beginning of this action but he followed those instructions and called an official named Eric (last name unknown) and this person provided plaintiff with the proper department, phone number and contact person.

79. In June of 2014, plaintiff sent a certified letter titled request for intervention to Thomas Galassi (director of enforcement for OSHA) asking for his assistance in correcting the wrong of all of the above mentioned OSHA officials but as of this date plaintiff have never received any type of response, demonstrating racism, disrespect and negligence.

### COUNT - IV DISCRIMINATION BASE UPON RACE

(Against all Defendants)

80. The Plaintiff incorporates and restates the preceding paragraphs in this complaint as if fully set forth herein.

81. Pacesetters personnel local officials failed to provide due process of law by removing plaintiff from job site after he was assaulted by a white co-worker but allowing the said person to remain, violating 42 U.S.C.2000e(2)(a)(1)(b).

82. The plaintiff was terminated for opposing the above action and that was a direct violation of 42 U.S.C. 2000e (3) (a).

83. On October 3, 2013 plaintiff attempted to bring the discriminative practice to Pacesetters corporate level by speaking to Pat Tamarow an official from the Texas corporate office but he failed to respond to the violation because of plaintiff race and perceived social standing.

84. The plaintiff left a message with David Stevens October 7, 2013, another Texas corporate official of who never responded forcing plaintiff to pursue redress from other areas and that was when he contacted Tom Corritan a local Pacesetters official who was unable to assist which shows total incompetence or willful discrimination.
85. After multiple attempts to rectify the problem plaintiff contacted a Texas corporate official named Garta Woodfin who claimed he would investigate but only followed the direction of the above mentioned Pacesetters personnel in a conspiracy to discriminate.
86. While pursuing due process from Pacesetters plaintiff was forced to file charges against the assailant due to the nature of his injuries and the unwillingness of Pacesetters to compensate for losses and that action was taken on October 3, 2013 to counter the negligence of those officials.
87. The Veteran Administration police officers Timothy Shea and Arturo Garcia discriminated against plaintiff based upon race by fabricating and falsifying documents, claiming in the incident report that it was a simply assault even though plaintiff sustained serious injuries.
88. The failure of the V.A. police department to investigate the incident allowed Pacesetters to escape liability for injuries and once that gross violation was brought to their attention they ignored it because of plaintiff race and perceived social status.
89. The plaintiff pursued justice through multiple levels of the Veteran Administration chain of command (i.e.) patient advocacy office, safety management office and the director's office in which all demonstrated racism treating plaintiff differently than that of a white person violating the equal protection clause of the fourteenth amendment .
90. At the same time plaintiff was being discriminated upon by both Pacesetters and the Veteran Administration he was pursing aid from the Department of Labor (OSHA) to correct that problem but was met with a similar situation by them (OSHA) refusing to truly investigate on their own but assisted Pacesetters with their conspiracy .
91. The plaintiff filed his original complaint with the OSHA branches in Atlanta, Georgia and Washington, D.C., in January of 2014, "by certified mail" and from that time up until July of 2014, plaintiff complaint was purposely delayed, misdirected and improperly categorize to frustrate him from pursuing that action any further violating 18 U.S.C. section 242 "deprivation of rights under color of law".
92. The plaintiff appeal to the highest level of enforcement at the Department of Labor (OSHA) in June of 2014, forwarding a request to Mr. Thomas Galassi, "The Director of enforcement" but have never received any response proving a lack of respect for black people due to a racist mindset that is embedded in this society.

## DEMAND FOR RELIEF

Plaintiff demands Judgment as follows:

1. Actual Damages,
2. Punitive damages,
3. Attorney's Fees and Cost of this action,

4. Award such other and further relief as it deem just and equitable,
5. Award plaintiff monetary civil penalties for each violation as alleged in this complaint in an undetermined amount from Pacesetters, OSHA and the Veteran Administration and an undetermined amount from each officials in their official and personal capacity.

<u>**JURY DEMANDED**</u>

Plaintiff demands a jury trial on all issues so triable.

Dated: 12-12-14                                            Respectfully submitted,

Noel Vincent Thomas

Pro Se Litigant

3905 Tampa Road #23

Oldsmar, Florida 34677

Phone: 786-383-5364 /904-248-1478

Email: nlthms44@gmail.com